MACK W. CRISSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. In criminal cases below the grade of felony, the testimony of an accomplice may be sufficient to authorize a conviction.

2. But where the accomplice was impeached by showing that he had before the trial made affidavit that the defendant was not guilty, and stated in his testimony as a reason why he had sworn falsely, that it was done under a threat, which threat was denied by the person charged by him with having made it, he being also a witness:

*Held,* that it was error in the court in charging on the question of *alibi*— upon which point the defendant had introduced evidence, and which charge was founded solely on the testimony of the accomplice, to say to the jury: "In disposing of the witness to prove the *alibi* you will consider whether there are any material facts proven in the case which challenge your full belief, which are entirely incompatible with the evidence of the witness, Robinson, who proves the *alibi*, then without imputing falsehood to him you will charitably conclude that he was mistaken as to the time, if the witness lived close by the accused, had frequent opportunities of seeing him, and frequently saw him drunk in visiting his house," etc.

Criminal law. Witness. Accomplice. *Alibi.* Before Judge KNIGHT. Lumpkin Superior Court. September Term, 1873.

Mack W. Crisson was placed on trial for the offense of larceny from the house, alleged to have been committed on October 11th, 1871, by entering the gold quartz crushing mill of William R. Crisson and taking therefrom nine pennyweights of gold. The defendant pleaded not guilty.

The case is sufficiently reported in the opinion.

WIER BOYD; W. P. PRICE, for plaintiff in error.

C. J. WELLBORN, solicitor general, by C. D. PHILLIPS; THOMAS F. GREER, for the state.

TRIPPE, Judge.

1. The testimony of an accomplice may be sufficient to convict in a case below the grade of felony, and there was no error in the charge of the court on this point: *Parsons vs. The State,* 43 *Georgia,* 197.

2. We place our judgment granting a new trial on what we think was an error in the charge which the judge certifies he made in reference to the testimony of the accomplice, Adams, when considered in connection with the evidence of Robinson, the witness introduced by the defendant to prove the *alibi.* If Robinson spoke the truth, the defendant could hardly be guilty—at least the testimony of the accomplice was not true. The defendant was drunk, very drunk, so much so that it was with difficulty he could ride his pony, about dark on the night of the robbery. He also went home with a bottle of whisky in his pocket. At the hour that Adams says the house was broken into, Robinson swore that he went to defendant's house; that defendant was in bed drunk; that he sat up awhile and talked with him " a few words and then he fell," and had his bottle with him. This witness states positively that this was the night of the larceny, and gives his reasons for identifying it. He was unimpeached. Adams was not only an accomplice, confessedly so, and had been convicted for the same offense, but also was pretty strongly impeached. This impeachment was not simply by proving contradictory statements, but he had made an affidavit that defendant was innocent. His explanation of this was that he was induced to make the affidavit, both by promises and threats made by the brother of defendant. These promises and threats were denied by the brother, who was sworn as a witness. The corroborating circumstances were slight, if any. It appeared that there were two tracks near the house broken into, and that one of them was made by a number eight shoe or boot, and that defendant wore that number, as well as many others. Here, then, was a case which the jury was to determine on the evidence. That evidence was the testimony of one who not only swore that he was a felon, in breaking and entering into the house and stealing therefrom—though he was only indicted for larceny from the house—but that he was also guilty of false swearing, and the reasons he gave as palliating the last act were sworn not to be true by another witness. On the other side, the *alibi* was pretty strongly proven by an un-

impeached witness. It is true there was another witness who was present at the time testified to by Robinson, who was not introduced, and whose absence, unexplained, was doubtless urged in the argument as a circumstance against the truth of the defense. In this state of matters, the question as to who was to be believed, the accomplice or Robinson, should have been submitted to the jury without any undue weight given by the charge to the jury, either to the facts on the one side or the other. Was the charge free from this objection under the peculiar condition in which the case stood before the jury? The charge was, "In disposing of the witness to prove the *alibi*, you will consider whether there are material facts proven in this case *which challenge your full belief*, which are wholly incompatible with the evidence of the witness Robinson who proves the *alibi*, then, without imputing falsehood to him, you would charitably conclude that he was mistaken as to the time, if the witness lived close by the accused and had frequent opportunities for seeing him, and frequently saw him drunk in visiting his house." The only *material facts proven*, which are wholly incompatible with the evidence of Robinson, were stated in the testimony of Adams, the accomplice, and the charge presented the points which the jury might consider for the purpose of discrediting the testimony of Robinson too strongly and prominently, when the source from which the material facts were furnished, on which the rejection was to rest, is considered. It gave the jury every view that could be taken which might weaken the force of the testimony coming from defendant's chief witness, without connecting therewith those that affected the evidence for the prosecution. If there be facts that are proper for the jury to consider in determining the credit to be given to the witnesses on both sides, they should be all submitted to them. If the weak joints in the armor of the one be pointed out, it would be fair to expose the unprotected "heel" of the other. From the view we take of the whole case in connection with this charge, we think a new trial should be granted.

Judgment reversed.