[Filed November 13, 1888.]

# STATE OF OREGON, RESPONDENT, *v.* CHEE GONG AND FONG LONG DICK, APPELLANTS.

WRITTEN DOCUMENTS IN EVIDENCE. — Before written documents can be introduced in evidence against a defendant on trial for crime, which tend to prove his guilt or to cast suspicion upon the good faith of his defense, they must be proved to be his production, or that he personally, or by another, attempted to use them to his advantage. *Held,* therefore, that where C. G. and F. L. D. were on trial charged with the crime of murder, and the trial court ruled that certain papers containing requests to other parties to testify in their behalf were admissible in evidence, upon a showing that the papers had been delivered by some one, it not appearing to whom, to intermediate parties for transmission to the parties upon whom the request was made, and there was no proof of the defendants having prepared the papers, it was error.

EVIDENCE IN A CRIMINAL PROSECUTION. — Evidence of an *alibi* in a criminal prosecution is not such a defense as admits guilt upon the part of the defendant for any purpose; it merely tends to refute the testimony of the prosecution that the defendant did the act charged. It is evidence in the case which the jury are to judge the effect and value of, and the court has no right to comment upon it. *Held,* therefore, where the court instructed the jury upon the trial of two defendants charged with the crime of murder, that an *alibi* was very often resorted to by guilty persons as well as innocent ones, and one in which perjury, mistake, and deception are often committed, that it was error. *Held, further,* that an instruction to the jury that the burden of proof was on the defendant to make out the defense of an *alibi,* the State having first introduced proof and shown that the defendants were present at, and committed the alleged fatal assault, was also error.

APPEAL from the Circuit Court for the county of Multnomah.

*H. E. McGinn,* for Respondent.

*Williams & Wood,* and *P. H. D'Arcy,* for Appellants.

THAYER, C. J.—The appellants, with Chung Ling, Yee Long, and Chee Sun, were jointly indicted in the said Circuit Court for the crime of murder. They were charged in the indictment with having, on the sixth day of November, 1887, at said county, purposely, and of deliberate and premeditated malice, killed one Lee Yick. They were tried separately from the other defendants in the indictment, and found guilty of the crime as charged. The said Chung Ling, or Ching Ling, as he seems frequently to have been called, was also tried and convicted. An appeal was, however, taken to this court from the judgment of conviction in his case, and the judgment reversed.

A report of the case will be found in 16 Or. at page 419, which contains a statement of the facts of the affair. The appellants herein allege a number of grounds of error, which are presented for our consideration, but as many of them go merely to matters of form, we do not deem it necessary to consider them. Two of the grounds of error relate to the admission of testimony concerning certain papers claimed to have been signed by the said Fong Long Dick, and another ground relates to an instruction given by the court to the jury as to the proof of an *alibi.* These are the only grounds we deem necessary to consider.

It appears from the bill of exceptions that the prosecution introduced as a witness a Mr. A. W. Witherell, the deputy sheriff, who testified that he recognized a certain paper shown him; that he got it in jail; that he went down to the jail to let a Chinaman from Astoria see another Chinaman who was in jail; that as the Astoria Chinaman passed by the cell window of a cell in which, it is claimed, the appellants were confined, he saw a paper handed to the Chinaman whom he took into the jail through the bars. As the latter took the paper from the parties in the cell, he saw witness looking at him, and when witness stepped up to take it from him he tore it in two. Witness further testified that the persons inside did not see him when he took the paper from the Chinaman. Counsel for the State then offered the paper in evidence, which was objected to by appellants' counsel as incompetent and immaterial. The court overruled the objection, to which ruling appellants' counsel took an exception.

Upon his cross-examination witness testified that as he was passing along, some one put that paper out of the cell. In answer to the question as to who it was, he stated: "I do not know." He was then asked: "How many persons were in that cell?" to which he answered: "There may have been three or four persons in there, for all I know. I do not know of my own knowledge who was in the cell. It was dark in there."

The following is a copy of the paper as translated by a China witness: "Young Show and Foo Sing; both kind friends; again tell Low Hong, be my friend; Found Deg, witness. Be

536 STATE OF OREGON v. CHEE GONG. [Sup. Ct.

Opinion of the Court—Thayer, C. J.

sure testify that I and Lue Hung lived in same room two months. Not say longer. Tell that we are acquaintances. Tell it that time I came back to my room at half past seven or eight o'clock. Be sure and answer."

The translation was then under the ruling of the court given in evidence to the jury. Counsel for the State called as a witness one Johnson, who testified that he knew these Chinamen; that one of them handed him this paper; that the way he received it, it was in a package of cigarettes. The tobacco was taken out, and that was in the same way the tobacco was. The witness was asked which one of the three gave it to him, and replied: "The one down stairs gave it to me. He said that he received it in the way mentioned, and that he did not know the Chinaman's name who gave it to him; that he did not know Ching Ling by name."

The paper was then read to the jury, against the objection of the appellants' counsel, and is as follows: "Mr. Young Suie. Be sure to see me this evening at eight o'clock especially. If you do not come, I will be disappointed; important business. Ching Ling." Witness testified that he did not know Young Suie.

The instruction excepted to and claimed as error was as follows: "Evidence has been introduced on behalf of the defendants to prove an *alibi;* that is, that the defendants were not present at the alleged fatal assault. When this is made out to your satisfaction it is one of the most conclusive defenses that can be set up; in fact, an *alibi* is not only a proper defense, but to an innocent man is almost always an essential defense, and indeed, it may be his only defense. It is a defense, however, that is very often resorted to by guilty persons as well as innocent ones, and one in which perjury, mistake, and deception are often committed. The burden of proof is on the defendants to make out the defense of an *alibi* when so set up by them as a defense, the State having first introduced proof and shown that the defendants were present at, and committed the alleged fatal assault. Therefore, while an *alibi* is a defense that should not be discredited on account of its character, still it devolves upon

the jury the duty of carefully scrutinizing the testimony in such cases, and of exercising unusual care and minuteness in considering it."

The evidence of the contents of the two papers was clearly admissible. The proof that the appellants, or either of them, prepared or delivered the papers to any one was entirely insufficient. It might be conjectured that said Fong Long Dick passed the first one out of the cell to the Astoria Chinaman, but it was not proved that he did so. Before such a paper can be introduced in evidence, it must be shown that it was the production of the party against whom it was offered, or that he delivered it, either in person or by another, for the purpose of being given to the party for whom it was intended. Such evidence in so important an affair must be direct and certain.

In an action for the recovery of a debt of ten dollars, a paper containing an acknowledgment of it would not be admitted as proof against the defendant upon so slight a showing as was made in this case. Counsel for the State claim that the evidence could not have injured the appellants, but I think otherwise, and that it was error to admit it. I think also that the said instruction was not permissible under our Code.

It is not the province of the court to comment upon the evidence addressed to the jury; it can only state to them the matters of law which it thinks necessary for their information in giving their verdict. It is inhibited from presenting to the jury the facts in the case; and is required to inform them that they are the exclusive judges of all questions of fact. (Code, § 200.) The jury, subject to the control of the court in the cases specified in the Code, are the judges of the effect or value of evidence addressed to them, except where it is thereby declared to be conclusive. (Code, § 845.) The evidence of an *alibi* was not a defense, except so far as it controverted the testimony upon the part of the State, tending to show that the appellants were present and participated in the affair charged in the indictment. When proof is given upon the part of the prosecution which goes to show that the defendant did the acts charged against him, he has the right to disprove it, by showing that he

was at another place at the time of their alleged commission; and it is the exclusive province of the jury to judge of the weight of the testimony introduced for that purpose, as much as of any other testimony in the case. It is, as said by Mr. Bishop, mere ordinary evidence in rebuttal; and any charge to the jury that it is not, as that the law looks with disfavor upon it, or that it should be tested differently from other evidence, is erroneous. (1 Bishop on Criminal Practice [3d ed.], § 106.)

The establishment by the prosecution of a *prima facie* case does not change the burden of proof; that remains with the prosecution to the end, "the jury, to be authorized to convict, being required to take into the account all the evidence on both sides, including the presumptions, and to be affirmatively satisfied from it with the certainty demanded by law of the defendants' guilt." (1 Bishop on Criminal Practice [3d ed.], § 1050.) The prosecution undertakes to prove the defendant guilty beyond a reasonable doubt, not in view alone of the direct testimony adduced by it, but in view of rebutting testimony as well. The State cannot stop after making out a *prima facie* case against the defendant, and require him to prove himself innocent.

There are cases of special defenses which admit guilt, at least for the purposes of the trial; but they arise out of a plea of some special matter, set up by the defendants, such as, a former conviction, pardon, or, under our Code, insanity; but no such results attend a trial upon a mere traverse of the charges contained in the indictment; nor is the burden of proof shifted on the defendant, when he undertakes to refute the testimony on the part of the prosecution tending to sustain them.

The instruction was clearly erroneous, and the judgment of conviction must be reversed and a new trial awarded.