**John T. DIRRING**, Defendant, Appellant,

v.

**UNITED STATES** of America, Appellee (two cases).

Nos. 6177, 6178.

United States Court of Appeals First Circuit.

Heard Jan. 8, 1964.

Decided Feb. 25, 1964.

Philip W. Halloran, Boston, Mass., with whom Ernest W. Piper, Jr., Boston, Mass., was on brief, for appellant.

A. David Mazzone, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., and Murray H. Falk and Gordon A. Martin, Jr., Asst. U. S. Attys., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

A national bank in Avon, Massachusetts was robbed at 11:00 A.M. on February 1, 1963, by two masked men. The primary question on these appeals is whether there was sufficient evidence for the jury to find that one of them was defendant appellant. The cast of principal characters and list of properties are the following: Dirring, defendant appellant, known as "Tiny"; Gleason, convicted co-defendant, who does not appeal; Mrs. Lucas, in whose house lived an adult daughter and Gleason; Somma, under indictment with Gleason for another matter; Mrs. Somma; a Buick sedan, property of Dirring; a 1949 Dodge, bought in the latter part of January 1963 by Gleason for Mrs. Lucas; an Oldsmobile station wagon, stolen on January 28, 1963.

The evidence warranted finding the following. About two weeks prior to February 1, 1963 Gleason called at the Somma's house accompanied by two men, one of whom was referred to as "Tiny," and who was short, of heavy build, and wore glasses and a hearing aid.* Gleason asked Somma if he wanted to "drive a car on a score." It was not defined what this meant. Somma refused. On January 30, and again on January 31, a telephone call was made from Mrs. Lucas' house to a number in Boston. The latter was a pay phone registered in Dirring's name, and was installed in a wallpaper and paint shop which was his place

---

* Considerable effort was exercised by the government to bring out that Gleason's companion wore a hearing aid, and it may be that Dirring as he sat in the courtroom wore an aid, but the record does not reflect this.

of business. Neither Mrs. Lucas nor her daughter placed the call, or knew Dirring.

On the morning of February 1 Gleason had received Mrs. Lucas' permission to use the Dodge. Shortly prior to 11:00 A.M. all three cars were in a parking lot about two miles from the bank. At the time of the robbery the Oldsmobile (only) was absent. The Oldsmobile was with close approximation identified by bank witnesses as the "getaway" car. Soon after the robbery the Oldsmobile was back in the lot, but the Dodge and Buick were gone. Gleason arrived at the Somma house about 11:45 A.M., shortly after which Mrs. Somma observed the Dodge in the yard. Gleason told Mrs. Somma that if anyone asked to say he had been there since 10:30. Some days later he told Mrs. Somma that if he were blamed for the robbery he was going to implicate her husband.

Neither defendant testified. Dirring called three witnesses who placed him in Rhode Island the morning of the robbery. One of them, a garage mechanic, testified that Dirring brought him a car on the morning of February 1 to have Rhode Island plates installed, and produced a dated work ticket in confirmation. The records of the Rhode Island Registry of Motor Vehicles, however, disclosed that these plates had not been issued until February 6.

In the matter of identification the bank witnesses described one of the robbers as 5' 7" tall and weighing about 170 pounds and having a round face and eye glasses. This fitted Dirring so far as it went. The identification testimony which poses a special question is that of Mrs. Somma. Called by the government, on direct examination she testified that the man called Tiny who accompanied Gleason to her home in mid-January was not Dirring, the man present in the courtroom. The government then showed her a police, or "mug shot" photograph of Dirring, and she admitted having previously identified it as Gleason's companion. The court asked the witness, "Is the man who is in that photograph now in the courtroom?" to which she answered, "Yes." Subsequently she was asked "Is this a picture of the man that was at your home on that occasion?" to which the answer was, "Yes." The picture was then admitted. Thereafter, on cross-examination, the witness again stated that the defendant was not the man.

■ There are cases where a witness' final testimony on cross-examination wipes out his contradictory testimony on direct. Martin v. Boston Elevated Ry., 1928, 262 Mass. 542, 160 N.E. 300; cf. Reiss v. United States, 1 Cir., 1963, 324 F.2d 680, 685, cert. den. Jacobs v. United States, 84 S.Ct. 667. However, contradiction ordinarily leaves merely a question of fact, with the jury free to decide what to accept as the truth. Zimberg v. United States, 1 Cir., 1944, 142 F.2d 132, 136–137, cert. den. 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573; United States v. Bushwick Mills, Inc., 2 Cir., 1947, 165 F.2d 198, 203; Craig v. United States, 9 Cir., 1936, 81 F.2d 816, 828, cert. den. 298 U.S. 690, 56 S.Ct. 959, 80 L.Ed. 1408. In the light of the pressure this witness might have felt to testify in Dirring's behalf, we think the jury could properly draw an inference unfavorable to him from this total testimony.

■■ Nor do we agree that it was error to allow the police photograph in evidence because it revealed that the defendant had been in prior difficulties. While this subject is frequently thought of in terms of the well-established exceptions, such as those relating to identity, design, or intent, see, e. g., Jarabo v. United States, 1 Cir., 1946, 158 F.2d 509, 513–514, the principle seems better described (although again it is not free from exception) from the obverse standpoint. "Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." United States v. Stirone, 3 Cir., 1958, 262 F.2d 571, 576, rev'd on other gr'ds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252; see McCormick, Evidence, § 157 (1954); cf. Uniform

Rules of Evidence, 55, 47 (1954). As we said in Green v. United States, 1 Cir., 1949, 176 F.2d 541, 543, "[T]estimony otherwise relevant is not rendered inadmissible merely because its tendency to prove the commission of some other crime." The photograph in question had independent relevancy, not possible to separate. We think it was within the court's discretion to conclude that this outweighed the photograph's prejudicial effect. Cf. Bram v. United States, 8 Cir., 1955, 226 F.2d 858; Hardy v. United States, 8 Cir., 1952, 199 F.2d 704, 706–708; Hilliard v. United States, 4 Cir., 1941, 121 F.2d 992, 997–998, cert. den. 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503. Defendant was entitled to a limiting instruction if he so desired; he cannot, however, complain where none was asked for. Cf. Reiss v. United States, supra, 324 F.2d at 683.

We agree with the government that the testimony indicating fabrication of the alibi evidence could be considered against the defendant. Rich v. United States, 4 Cir., 1958, 261 F.2d 536, cert. den. 359 U.S. 946, 79 S.Ct. 731, 3 L.Ed.2d 678; People v. Delerme, 1937, 51 Puerto Rico 503; cf. United States v. Simone, 2 Cir., 1953, 205 F.2d 480; But cf. Burtnett v. United States, 10 Cir., 1932, 62 F.2d 452 (mere disbelief of alibi is not affirmative proof of guilt). See, generally, 2 Wigmore, Evidence §§ 278, 279 (3d ed. 1940).

There is no merit in defendant's contention that to support a conviction upon circumstantial evidence every reasonable hypothesis inconsistent with guilt must be excluded. Holland v. United States, 1954, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Woodner, 2 Cir., 1963, 317 F.2d 649, cert. den. 375 U.S. 903, 84 S.Ct. 903, 11 L.Ed.2d 144, United States v. Allard, 3 Cir., 1957, 240 F.2d 840, cert. den. 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761. We do not agree with the rule of the Fifth Circuit as stated in Strauss v. United States, 5 Cir., 1963, 311 F.2d 926, 931–932.

The defendant cautions us against "piling inference upon inference." As interpreted by the defendant this means that a conviction could rarely be justified by circumstantial evidence. See 1 Wigmore, Evidence, § 41 (3d ed. 1940). The rule is not that an inference, no matter how reasonable, is to be rejected if it, in turn, depends upon another reasonable inference; rather the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt. See United States v. Allard, supra; United States v. Valenti, 2 Cir., 1943, 134 F.2d 362, cert. den. 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712. If enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking. Reviewing the evidence in this case as a whole, we think the jury was warranted in finding beyond a reasonable doubt the picture of defendant Dirring.

All other points raised have been considered and found without substance.

Judgments will be entered affirming the judgments of the District Court.