UNITED STATES of America

v.

Luis Carlos Pineda TORO.

Crim. No. 74–121.

United States District Court,
D. Puerto Rico.

Oct. 10, 1974.

**398**

Carlos Perez Olivo, Hato Rey, P. R., (court appointed), for defendant.

## OPINION AND ORDER

TURK, Judge.

On July 18, 1974, defendant Luis Carlos Pineda Toro was charged in a two-count indictment with violating (1) Title 21 U.S.C. § 952(a) knowingly and intentionally importing one hundred thirteen pounds of marijuana into the United States; and (2) Title 21 U.S.C. § 841(a)(1) knowingly and intentionally possessing with intent to distribute one hundred thirteen pounds of marijuana. Defendant was tried from September 30, 1974 until October 2, 1974 before a jury. At the close of the evidence, defendant's court-appointed counsel moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure; the Court took this motion under advisement and submitted the case to the jury. After extensive deliberations, the jury reported that it was unable to reach a verdict and was therefore discharged. Defense counsel then renewed the motion for acquittal and the government moved that the Court declare a mistrial.

The question thus presented is whether defendant is entitled to an acquittal, or otherwise stated, whether the evidence adduced was sufficient as a matter of law to present a jury question as to defendant's guilt or innocence.

In ruling on this motion of acquittal, the role of this Court is similar to that of the appellate court in reviewing a conviction. In both cases the evidence must be viewed in a light most favorable to the government, and the Court may not usurp the province of the jury to determine credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from the evidence. Although in the case at bar the government's case was based solely on circumstantial evidence, the test to be applied is basically the same as that used in a case involving direct evidence—that is "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." Dirring v. United States, 328 F.2d 512 at 515 (1st Cir. 1964). The test in this case may also be stated in terms of whether jurors could reasonably decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusion that defendant knowingly and intentionally imported the marijuana and possessed it with the intent to distribute it. United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969).

Obviously the aforementioned standards do not lend themselves to easy, mechanical application. This is particularly so in the present case as will appear below from a summary of the evidence. The gravity of the decision to be made in this case is, in addition, accentuated by the fact that a decision for the defendant is final with no right to appeal afforded to the government. However, with regard to what has been stated above, the Court believes that the words of Judge Hutcheson in United States v. Riganto, 121 F.Supp. 158 at

160–161 (E.D.Va.1954), remain current and bear repeating here:

"A heavy primary responsibility of safeguarding the fundamental rights of the Government and the accused rests upon the trial court. The appellate court, with only a written record of the trial and the arguments of counsel before it, without an opportunity to weigh the testimony as it falls from the lips of witnesses, may easily fail to comprehend the insignificance of some bit of evidence when considered in relation to the full context, or the converse may be true. The result is that the records on appeal often fail to reflect clearly the nature of facts disclosed at the trial. While the accused has the right to appeal from a conviction and the Government has no such right, it has been repeatedly said that when circumstances make a motion for a directed verdict for the defendant proper, the duty to grant it is equal to the duty to deny the motion when it is not well founded.

The questions presented in many such cases are difficult. There is firmly embedded in the law the principle that the accused is presumed innocent until his guilt is established beyond a reasonable doubt. He may not be found guilty upon speculative theory or conjecture. Where circumstantial evidence is relied upon, as in this case, such evidence should be scrutinized carefully. It must be clear, convincing and inconsistent with any reasonable hypothesis of innocence. Until guilt is so proven, the presumption of innocence applies at every stage of the trial."

In light of the above discussion, the Court will recount the pertinent evidence produced at trial. On the morning of July 15, 1974, customs officers boarded the Colombian vessel Tanambi in order to search it. The door to defendant's cabin was found to be locked. They then found defendant on the ship and took him to the cabin. Defendant told the officers that he was the only person with a key to the room; he unlocked the room and accompanied the two customs officers inside. In the cabin the officers noticed two locked compartments —one under defendant's bunk and one in his desk. Defendant stated that he did not know where the keys to these compartments were but after being told that the doors to the locked compartments would be broken open, unless the keys were presented, the defendant searched for them and found the two keys in a drawer. Upon opening the compartment under the bunk, the officers found three packages which were subsequently found to contain marijuana. Defendant opened the desk compartment and removed a fourth package which also contained marijuana. One of the customs officers stated that upon finding the packages, defendant made a statement to the effect that he had economic problems and that he was not paid enough.

The testimony of the officers indicated that a fifth package of marijuana was found in a paint locker on the ship. The fifth package was said to differ from those found in defendant's cabin in that it was wrapped only in plastic. No one was charged with the importation or possession of the fifth package. The customs officers stated that all foreign vessels were routinely searched, however, one of the officers indicated that as a general rule there were more problems with drugs on Colombian vessels. Both officers also stated that the Tanambi docked on the 15th of July, and the search occurred before any of the crew had had an opportunity to leave the ship. The remainder of the government's case against defendant established that the seized packages contained marijuana and showed the chain of custody from the time of seizure until trial.

Defendant took the stand in his own defense. He stated that this was his second voyage on the Tanambi. He testified that the ship had arrived on the 12th of July; that no one boarded the ship at that time; that the crew and of-

ficers were allowed to go ashore in the evenings; and that he had done so. Defendant was the electrical officer on the ship and stated that he had access to the entire ship. He indicated that he had encountered no problems on his previous voyage on the Tanambi although he was aware that the "mafia" was active on Colombian ships, and that once on an earlier voyage he had been approached to delay the departure of a vessel. He stated that on the present voyage he had become concerned because he had overheard a conversation about transferring packages.

Defendant testified that on the morning of the 15th of July, he had noticed a strange smell in his room and had become afraid because he knew of the mafia and suspected that drugs might be the source of the odor. He stated that he normally left the keys to the compartments in the keyholes, however he noticed that they were not there that morning. He stated that he looked for them but upon not finding them, he locked his door and went to repair a wench. He explained his failure to report the smell because of his fear of the mafia; he indicated that he needed time to think of how to deal with the situation. Shortly thereafter defendant was taken by the customs officers to his cabin and the marijuana was found. He testified that when the marijuana was removed, he stated something to the effect that he now had problems. He denied having placed the packages in his room or having given permission to anyone else to do so.

The only other defense witness was the captain of the Tanambi. He brought the logs of the voyage to the trial and by use of these corroborated defendant's testimony that the ship had docked on the 12th of July, and that the crew and officers had been allowed to go ashore. He corroborated the testimony that drugs were a problem on Colombian vessels, and stated that on this particular voyage, he had ordered several searches of the ship but nothing had been reported. He also testified to the influence of the mafia on Colombian ships and stated that he knew instances in Colombia in which customs officers were controlled by the mafia. The captain further testified that in addition to defendant, he and the first mate had keys to defendant's cabin. He also stated that it would not be difficult to pick the lock to the door in question. There was, in addition, evidence that the Tanambi was eight or nine years old although there was no evidence as to who had previously occupied defendant's cabin. The captain also testified that he had known defendant since 1968 and believed that he was generally of good character. No evidence to the contrary was presented by the government.

The question of whether or not the defendant is entitled to an acquittal in view of the above-summarized evidence is by no means free from doubt. This is so because the Court is of the opinion that if it had before it only the government's evidence, a jury question would assuredly be presented. And although for purposes of this motion, the Court must view the evidence in a light most favorable to the government, the Court cannot completely ignore the evidence offered in defense. Thus the Court cannot ignore the overwhelming evidence that the Tanambi docked on the 12th of July, and the crew and officers were allowed to go ashore, despite the unequivocal testimony of the government witnesses that the ship docked on the 15th and was searched before the crew could leave. Nor can the Court ignore the uncontradicted evidence that there were three known keys to defendant's cabin and that others possibly also existed. Finally the Court cannot disregard the uncontradicted evidence that drugs are a particularly serious problem on Colombian vessels and that organized crime is actively engaged in smuggling drugs via such vessels.

■ Although the circumstantial evidence offered by the government was sufficient to present the question of guilt to a jury, the Court believes that the evidence presented in defense was

sufficiently strong, even after discounting credibility of the witnesses and resolving conflicts and inferences in favor of the government as to create a reasonable doubt in the minds of jurors as to defendant's guilt. The Court accordingly concludes after careful consideration of all the evidence that defendant is entitled to an acquittal as a matter of law.

In deciding this case as it does, the Court of course does not determine that defendant is innocent of the crimes charged. Rather what has been decided is simply that the evidence presented in an effort to prove the government's case was insufficient as a matter of law to remove the reasonable doubt as to defendant's guilt. It may well be that defendant is guilty of the crimes charged, and it is possible that the presumption of innocence could have been adequately rebutted so as to allow a jury to convict. But such was not the case. The government witnesses indicated that no attempt was made to take fingerprints from any of the packages of marijuana found on the vessel or to otherwise positively link the four packages found in the cabin to the defendant. The testimony indicated that the government agents were not even aware that the ship had been in port and the crew and officers allowed to go ashore for three days prior to the search. There is even doubt that the government was even aware prior to trial that there were several keys to defendant's cabin. With the vast resources available to the government it would have been an easy matter to thoroughly investigate this case so as to remove any reasonable doubt as to defendant's guilt or establish his innocence. The Court of course assumes that the government is as interested in exonerating the innocent as it is in convicting the guilty. In this case what appears to have happened is that after establishing the strong circumstantial evidence of the marijuana being found in defendant's locked cabin, little or no further investigation was undertaken despite defendant's assertions of innocence.

It is worth restating here that under our system of government a person charged with a crime does not shoulder the burden of proving his innocence. Rather, any person charged with a crime, no matter how serious in nature and regardless of the evidence available tending to prove guilt, remains presumptively innocent until such time as a judge or jury find or infer from the evidence presented in open court that that person is guilty of the crime charged *beyond a reasonable doubt*. And this is of course precisely as it should be under a system such as ours which recognizes as its most basic tenet the dignity and worth of each individual. This burden which our Constitution imposes on those entrusted with the difficult and often times thankless responsibility of enforcing the criminal laws is severe, and there can be no doubt that we as a society pay a substantial price both in costs of investigations and prosecutions and in failures to convict some of those who are guilty. Yet it is a price which remains a bargain if but a single innocent person is acquitted.

As stated above, this Court is of the opinion from a consideration of all of the evidence, that a reasonable doubt remains as to defendant's guilt. Because of this and the fact that no further development of this case could be expected on retrial, the Court is constrained to grant defendant's motion of acquittal. The Court finally wishes to express its thanks to both the Assistant United States Attorney and defendant's court-appointed counsel for their able presentation of this case.

The motion of acquittal is granted and it is ordered that the defendant be released forthwith.