## UNITED STATES v. NOMEL PRODUCTS CO., Inc., et al.

District Court, S. D. New York.
May 24, 1930.

Supplemental Opinion June 10, 1930:

Charles H. Tuttle, U. S. Atty., of New York City (Arthur H. Schwartz, Asst. U. S. Atty., of New York City, of counsel), for the United States.

John M. Cashin, of New York City, for defendants.

CAFFEY, District Judge.

The fluid extract of ginger involved contained upwards of 81 per cent. of alcohol by volume. It was located in a business building. It had not been manufactured or prepared according to formula or Treasury regulations. The holder had no permit. If it be intoxicating liquor, then obviously, under section 3 of title 2 of the National Prohibition Act (27 USCA § 12), possession of it was unlawful. Keen v. United States [C. C. A.] 11 F.(2d) 260, 263. As I understand, counsel agree on that point. The problem therefore is to determine whether it is intoxicating liquor. This depends on the definition of the phrase in section 1, tit. 2 (27 USCA § 4).

Within section 1, in order for a liquid having the prohibited alcoholic content to constitute an intoxicating liquor, as the term is employed in the statute, it must be such as is "fit for use for beverage purposes." The controversy between the petitioner and the government really turns on the significance of the word "fit."

The product was examined by a chemist. He says that "by diluting with water or some other suitable potable liquid, the said substance, so analyzed by me as aforesaid, can be used for beverage purposes when containing more than one-half of one percent of alcohol by volume." A fair interpretation of his statement is that, as of the time the fluid was found in petitioner's establishment, it was not already in condition for human consumption by drinking, but that it was then capable of being rendered ready for that use by mere dilution either with water or with some other appropriate liquid. Upon these facts the government contends that the article is, and the petitioner contends that it is not, within the sense of the law, "fit" for beverage purposes.

The manifest design of the National Prohibition Act is to prevent, save only as otherwise expressly provided therein, employment as a beverage of all substances having in them as much as one-half of one per cent. of alcohol. It is fundamental that in construing a statute its object must be taken into account; also that, in so far as consistent with the language, an interpretation must be adopted which will accomplish or assist in accomplishing that object. For example, if a word of ambiguous import be employed, and the court therefore be forced to choose between two conceivable meanings, the duty is to accept the meaning which will carry out or help to carry out the purpose of the Legislature.

Among the definitions of the adjective "fit," given in Webster's Dictionary and in the Standard Dictionary, are:

Webster: "Adapted to an end, object or design; suitable by nature or by art; suited by character, qualities, circumstances, education, etc.; qualified; competent; worthy."

Standard: "Adapted to an end, aim, work, or design; adequate; competent; qualified; * * * conformed to a standard of duty or taste; congruous; suitable; appropriate; * * * in a state of preparation; ready; * * * as if; all but; well nigh. * * *"

In harmony with both dictionaries, it is open to us to attribute to the word "fit" the significance either of an existing capacity or of a capacity that may be consummated by further action. In these circumstances, it seems clear that the court is required to select, as between the two permissible alternatives, that interpretation which harmonizes with the general scheme of the statute and which would assist in the ultimate realization of the indisputable aim of Congress. Plainly evasion of the prohibitions of the statute would be easy if nonpermittees were left free to handle at will substances containing 81 per cent. of alcohol which become drinkable by mere dilution with water.

546

Moreover, Congress has explicitly declared the wish, if not the command, that the method here adopted for interpreting the statute be followed. In section 3 of title 2 it is affirmatively prescribed that, "All the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." The Supreme Court itself relies on this legislative announcement in its effort to ascertain the meaning of the act. Danovitz v. United States, 50 S. Ct. 344, 74 L. Ed. 923, and cases cited.

■ Turning now to the property before this court, it appears that the only essential to putting it into actual readiness for consumption is to dilute it with water or other potable liquid.

It has been held, Hawthorne v. United States (C. C. A.) 37 F.(2d) 316, 318, that an article of the prohibited alcoholic content which at the moment was not so prepared that humans could appropriately use it as a beverage, but which, by elimination from it of oil, could easily be rendered so usable, is within the terms of section 1 of title 2, an article which is "fit for use for beverage purposes." The instructions by the lower court to the jury (page 317 of 37 F.(2d), sustained on appeal, were that: "It is not necessary that there be proof of actual fitness of this alcohol for beverage purposes at the given time, provided it is reasonably fit in the sense that it is an article which, with little, or with a very simple change, can be put in the customary condition for beverage purposes."

Here combination of water with the extract of ginger makes the fluid an acceptable beverage. Certainly that change is "little" or "simple." I see no difference between addition and subtraction as the process required to render the substance dealt with ready for beverage use. Accordingly, I believe inescapable the conclusions: (1) That the affidavit of the chemist is sufficient support for treating the seized property as fit for beverage purposes, and hence (2) that its possession, without a permit, by a business house was unlawful.

In the course of the thorough and interesting argument of counsel, questions involving design or intent, under sections 18 and 25 of title 2 (27 USCA §§ 30, 39), were discussed. It is unnecessary, however, to pass on those matters.

Motion denied; commissioner's order reversed.

Supplemental Opinion.

At the request of counsel, I have examined the opinion of the Supreme Court handed down May 26, 1930, in Campbell v. Galeno Chemical Co., 50 S. Ct. 412, 74 L. Ed. 1063, and Campbell v. Long & Co., 50 S. Ct. 415, 74 L. Ed. 1070. In neither was the issue the same as in the case at bar. Both dealt with permits. In an incidental way only was there discussion of what is "fit" for beverage purposes.

In the Galeno Case it was said in note 5 that the record was barren of evidence that the medicinal preparations involved could be fitted for beverage purposes "by the simple process of adding water, or by any other process." In the instant case the proof is that the article with which we are concerned can be rendered "fit" by merely adding water.

Defendants call attention to the statement in note 7 to the Long Case that "denatured alcohol, however treated, is not fit for beverage purposes." From this it is argued that the holding of the Hawthorne Case was overruled. It seems to me, however, that the language quoted refers only to the provision of title 3, § 10, of the National Prohibition Act (27 USCA § 80), expressly requiring a denaturing plant, by admixture of denaturing materials, to "render" the alcohol employed "unfit for use as an intoxicating beverage." In other words, as I construe what the court said, it was meant, by way of definition, that the portion of the statute governing industrial alcohol directed use of a process of denaturation which would prevent the alcohol from thereafter being converted, by any device whatever, into a potable liquid.

The consequence is that I adhere to my previous memorandum.