**UNITED CIGAR WHELAN STORES COR-
PORATION et al. v. UNITED STATES.**

No. 9397.

Circuit Court of Appeals, Ninth Circuit.

July 17, 1940.

Jesse H. Steinhart and John J. Goldberg, both of San Francisco, Cal. (Corette & Corette, Robert D. Corette, and William A. Davenport, all of Butte, Mont., of Counsel), for appellants.

John B. Tansil, U. S. Atty., of Billings, Mont., and W. D. Murray and R. Lewis Brown, Asst. U. S. Attys., both of Butte, Mont., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant United Cigar Whelan Stores Corporation, operates a retail store at the corner of Broadway and Main Street in the city of Butte, Montana. This store, which covers a rather small floor space and is tended by but one clerk at a time, stocks and sells cigars, cigarettes, tobacco, candies, shaving supplies, etc. Prior to June 16, 1939, the defendant offered for sale in this retail establishment rubbing alcohol, known by the trade name of Weko or Wecol, or both. Appellant Edgar Dehne was manager and chief clerk of this store operated by United and had been for several years; there was also employed at this store another regular clerk and a relief clerk.

January 12, 1939, representatives of the Alcohol Tax Unit for the United States Bureau of Internal Revenue called upon appellant Dehne at the United store in Butte and, after ascertaining that rubbing alcohol was offered for sale at the store, advised Dehne of the contents of Treasury Decision 4750, hereafter set forth, and that it placed a restriction on the sale of rubbing alcohol. They reminded him that he had been warned twice before against selling this alcohol for beverage purposes.

On March 9, 1939, Julius Johnson, an investigator in the Alcohol Tax Unit of the Bureau of Internal Revenue, dressed in old overalls, lumber jacket shirt, sweater, mackinaw, and slouch hat, entered the United store in Butte and purchased of Dehne a package of cigarettes and a pint of rubbing alcohol. An hour later, dressed in the same costume, Johnson returned to the store and purchased another pint of rubbing alcohol from Dehne. Two hours later Johnson made another purchase of a pint of rubbing alcohol, this time the clerk was one Cyril Varcoe; and again, on the same evening, one hour later, he made another purchase of rubbing alcohol from the same clerk. Four times the following day Johnson reappeared at the United store and said, "Give me another bottle of alcohol." The visits were made at the hours of 10:20 a.m., 12:20 p.m., 5:00 p.m., and 7:00 p.m., respectively. He paid for each bottle. Dehne was on duty at the time of the first and last visits on that day, and Varcoe was present on the other two occasions. Johnson wore the identical costume at the time of each purchase; neither clerk inquired into the reason for any of the purchases.

April 15, 1939, at 9:15 a.m., Johnson again visited the United store; relief clerk Walfred Maenpa was on duty. Johnson said, "Give me a pint of alcohol," and, as the clerk was about to wrap it, added, "Haven't you got the other brand. I like that better to drink than I do this," to which the clerk replied, "No, that is all I got." "Well," answered Johnson, "that is all right, I can drink it. Either one will put hair on your chest." Maenpa wrapped the alcohol, handed it to Johnson, who paid him for it and left the store. At 10:45 a.m. of the same day, Johnson returned to the United store where Maenpa was still on duty, and said, "Give me four pints of alcohol, will you? That other pint didn't last long with four or five of us drinking out of it." The investigator paid for the four bottles of alcohol and took them with him. Johnson wore the same costume, described above, on each visit to the store.

Immediately following each purchase of the alcohol, Johnson went to the office of the Alcohol Tax Unit in the Federal Building in Butte, where he or Mr. Cosgriff, an investigator for the Alcohol Tax Unit stationed in Butte, labeled each bottle, took a sample from each, labeled the sample bottle, and sealed all the bottles with sealing wax. Chemical analysis revealed the samples to be common rubbing

alcohol with apparent proof varying from 146.6 to 148.8, that is, an apparent percentage of alcohol by volume of approximately 73½ per cent.

None of the bottles purchased by Johnson from the United store bore a tax stamp which is required to be affixed to the bottle over the cork and indicates the tax and the quantity of the liquor contents. Nor was there on display in the store a United States Government Twenty-five Dollar Tax Stamp, which is required of retail liquor dealers. If the products were not sold for beverage purposes such stamps were not necessary.

An indictment, drawn in twenty-two counts, was filed in the court below June 17, 1939, naming the appellants here as defendants. The first count charged the defendants with carrying on the business of liquor dealer without payment of the tax imposed on such business. Counts two to eleven, inclusive, each directed to a specific sale, charged sales of denatured alcohol for beverage purposes. Counts twelve to twenty-one, inclusive, each directed to a specific sale, charged sales of denatured alcohol in unstamped containers. Count twenty-two charged possession of denatured alcohol with intent to violate the law. The case came on for trial, at the conclusion of which the jury found the defendants guilty on all counts of the indictment; defendant United Cigar Whelan Stores Corporation was fined; defendant Dehne was sentenced to serve 30 days in jail and fined. Both defendants appeal.

In addition to the evidence heretofore recited, the following evidence was adduced at the trial:

The prosecution introduced a statement of Edgar Dehne, taken April 23, 1939, by Cosgriff, wherein Dehne states that on an average the sales of rubbing alcohol, prior to the date thereof, in the United store in Butte reached 144 bottles a week; that he ordered the alcohol as needed; that since he had been advised of the restrictions placed on the sale of that product he refused to sell to persons whom he knew to be repeaters or "dehorners" [Slang: persons who drink denatured or rubbing alcohol or bay rum.]; that he had been advised by Mr. Cosgriff in June, 1938, it would be a violation of law to sell rubbing alcohol or bay rum to persons whom he had cause to believe were buying these products for drinking purposes;

that since that last date he had been careful not to sell to such persons; that, in January, 1939, Mr. Cosgriff advised him of receiving complaints that rubbing alcohol was being purchased at the store by persons who were drinking the alcohol; that he told Cosgriff to warn the company of this fact because they were sending it to him to sell. A somewhat similar statement had been obtained by Cosgriff from clerk Varcoe and was offered in evidence following Dehne's statement.

Four druggists from the neighborhood of appellants' store were called as witnesses for the Government and testified as to their average weekly sales of rubbing alcohol, which ranged from 18 to 36 pints a week.

Roy H. Beadle, a police officer of the city of Butte, whose beat or post was located at the corner of Broadway and Main Street in that city appeared as a witness for the Government. He testified that he noticed "dehorns" and drunkards entering the United store at different times, and emerging with rubbing alcohol, sometimes wrapped, sometimes unwrapped. He further testified that he had seen such persons drinking the alcohol and had made arrests therefor.

It was also brought out by the Government that no other drug store in Butte sold Weko or Wecol brand of rubbing alcohol.

At the conclusion of the case for the prosecution, counsel for defendants moved for a directed verdict of acquittal, which motion was denied, and the defendants excepted.

For the defense, Edgar Dehne explained the operation of the United store and the division of shifts between the clerks. He said he did not remember making any sales to the witness Johnson on the dates in question; that there were 442 customers in the store on March 9, 1939, and 488 on March 10th; that about 200 persons entered the store each day who did not purchase, but merely inquired; that there were 569 customers April 15, 1939; that the store carried and sold two brands of alcohol, Weko and Wecol; that many times he had sold more than one bottle of alcohol to a person. He further testified that he remembered being called upon by agents of the Alcohol Tax Unit, one of whom was Cosgriff, early in 1939, and that they reminded him of a warning given him several months earlier relative

to the sale of rubbing alcohol, and Cosgriff said, "Well, I continue to find that you are still selling rubbing alcohol," to which Dehne replied, "Yes, and I am going to continue on selling as long as it is sent in by the company, but I have cut down as best we know how in selling it to drunkards or dehorns." He also testified that from January 1, 1939, to the date of the indictment, the alcohol sales in the store were cut seventy-five per cent over the previous time. On cross-examination, however, it was brought out that, on January 5, 1939, the corporate defendant shipped 480 pint bottles of rubbing alcohol to the store and twelve days later shipped another 480 bottles. On or about June 16, 1939, the defendants ceased selling alcohol at the store. Dehne said that he never paid a tax or purchased a license which would enable him to conduct a retail or wholesale liquor business and that no stamp or license therefor was displayed at the store, nor, so far as he knew, had his codefendant paid a tax or procured a license for said business for said store. It was further brought out that he had been warned in June, 1938, and, at the time, given a copy of the treasury regulation controlling this problem, and that he was again advised, on January 2, 1939, of complaints made to the Treasury Department, in addition to the warning of January 12th. Clerks Varcoe and Maenpa each testified for the defendants, both to the effect that they did not remember Johnson or making the sales of rubbing alcohol to him and that they had been instructed by Dehne against selling alcohol to drunkards or persons whom they might suspect of using it for drinking purposes. On cross-examination Varcoe said that prior to being warned by Cosgriff, he placed no restriction on the sale of alcohol. Three other witnesses also gave testimony; each said he had witnessed United's clerks refuse to sell rubbing alcohol to apparent drunkards.

At the conclusion of all the evidence, counsel for the defendants renewed the motion for directed verdict. The motion was denied and an exception taken. There were no exceptions taken to the charge of the court to the jury.

Before entering into study of the appellants' specifications of error, it may be well to discuss the statutes and regulation under which the indictment was drawn. The first count of the indictment was based upon 26 U.S.C.A. § 1397 (a) (R.S. § 3281, 18 Stat. 310), which provided penalties for any person carrying on the business of a retail liquor dealer without payment of the special tax required by law; counts two to eleven were grounded in 27 U.S.C.A. § 85, 41 Stat. 321, which provided punishment for the withdrawal or attempted withdrawal tax free of any alcohol subject to tax, etc.; counts twelve to twenty-one covered, count by count, the identical sales covered by two to eleven and charged sales in unstamped containers under 26 U.S.C.A. §§ 1152a and 1152g, 48 Stat. 316 and 317; the last count, twenty-two, which was based upon 27 U.S.C.A. §§ 157 and 85 (49 Stat. 874, and 41 Stat. 321, respectively), covered possession of denatured alcohol with intent to evade the law.

The Act of February 10, 1939, 53 Stat. 1, repealed all laws and parts of laws, to the extent that they related exclusively to internal revenue, covered by the Internal Revenue Code, which was adopted on that date. The laws, cited above as 26 U.S.C.A. §§ 1152a, 1152g and 1397 (a), while within the repealing and saving clause, referred to above, were re-enacted as Sections 2803 and 3253 of the Internal Revenue Code and are now cited by those latter section numbers in 26 U.S.C.A.Int. Rev.Code.

The indictment was filed June 17, 1939, subsequent to the repeal of the two sections referred to therein by the old citations, as above described. The new sections, or re-enactments of the old, however, went into effect at the same time as the repeals took place—we might even say effected the repeals, therefore, there was no vacant period and the subject was at all times covered by valid statutes, so no harm resulted to appellants through the failure or inadvertence to set out the new citations in the indictment. The appellants are in agreement with this statement.

 Treasury Decision 4750, important here, is a notice of an amendment to Treasury Regulations No. 3, approved July 16, 1937, by the Acting Secretary of the Treasury, and reads as follows: "Article 146–A. No person shall sell denatured alcohol, denatured rum, or any substance or preparation in the manufacture of which denatured alcohol or denatured rum is used, under circumstances from which he might reasonably deduce

that it is the intention of the purchaser to procure the same for use for beverage purposes." Article 146–A is promulgated under the authority of 27 U.S.C.A. § 83, which gives the Commissioner of Internal Revenue power to issue regulations respecting, " * * * the distribution, sale, export, and use of alcohol which may be necessary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses, * * *." The repeal of the 18th Amendment to the Constitution of the United States did not repeal this section. United States v. Philip H. Warshaw, Inc., D.C.N.Y., 8 F.Supp. 95. "The Liquor Law Repeal and Enforcement Act of 1935 gives the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, authority to prescribe regulations for carrying out the provisions of the, National Prohibition Act (Chapter 3, tit. 3, § 1 et seq., 27 U.S.C.A. § 71 et seq.) Title I, Section 2 (6), 27 U.S.C.A. § 151 (6). This act further provides that any person violating a regulation pertaining to denatured alcohol shall be punished in accordance with the provisions of law pertaining to alcohol that is not denatured. Title I, Section 4, 27 U.S.C.A. § 153." United States v. Rosenzweig, D.C.Pa., 25 F.Supp. 811, 812. There is ample statutory authority for the regulation in question.

The appellants urge that the trial court erred in denying and overruling the motion for directed verdict, etc., made by defendants at the close of the Government's case, and renewed at the close of all of the evidence. Appellants contend, under this assignment, that, in order to constitute a violation of the regulation (Art. 146-A, Reg. No. 3), two factors must be proved, (1) the purchaser must intend to use the article for beverage purposes, and (2) the sale must be made under circumstances whereby the seller reasonably may deduce such intention existed. They argue that as the agent Johnson did not intend to use the alcohol for beverage purposes, but purchased it solely for use as evidence, the first element is not present and, therefore, no crime was committed, it being immaterial what purpose or intent existed in the mind of the seller. If the contention of the appellants is correct, the evidence is insufficient to support the judgment for, concededly, Johnson did not drink the denatured alcohol.

There was testimony, as heretofore outlined, by the police officer on the "beat" that he had observed drunkards and "dehorners" leaving the store operated by appellants carrying denatured alcohol, and had seen such persons drinking it and had made arrests therefor; that appellant Dehne had been advised, on more than one occasion, purchasers of alcohol from his store had been using it for beverage purposes. This evidence indicates that appellant Dehne and the clerks knew purchasers of rubbing alcohol had been drinking it. It is also quite clear that such denatured alcohol could be used as a beverage by persons of depraved taste, so it cannot be urged that such denatured alcohol could not be used for this purpose. See and compare United States v. Nomel Products Co., Inc., et al., D.C.N.Y., 41 F. 2d 544, 546, and Campbell v. W. H. Long & Co., 281 U.S. 610, 616, note 7, 50 S.Ct. 415, 74 L.Ed. 1070.

The appellants offer the case of Sherman v. United States, 6 Cir., 10 F.2d 17, 19, as authority that, "unless the purchaser at the time of the purchase intends beverage use, there is no violation of law in which the seller can participate, either by direct purpose or by equivalent indifference and negligence." However, a much later case, involving sales of the same substance as the Sherman case, supra, reaches the opposite conclusion. In Burtnett et al. v. United States, 10 Cir., 62 F.2d 452, 454, a prohibition agent purchased of defendant two two-ounce bottles of substandard Jamaica ginger on two separate occasions on the same day, making said purchases for the purpose of securing evidence and not to use as a beverage; these sales furnished grounds for two counts of an indictment. The Circuit Court of Appeals in sustaining denials of motions for directed verdict said, "* * * the fact that the purchaser did not buy it for beverage purposes was immaterial." The case was reversed for error in instructions to the jury. We believe the Burtnett case offsets the Sherman case and is sustained by the better reasoning. See also Massei v. United States, 4 Cir., 295 F. 683, 684.

Our attention has been drawn to United States v. Abda, D.C.Pa., 32 F.Supp. 23, as sustaining the argument of appellants and giving support to the ruling of the Sherman case, supra. The Abda case was tried to the court without a jury;

the question of intent had to be determined by the judge. A quotation from the opinion in that case will show how clearly the facts in that case are distinguishable from those in the instant case (32 F.Supp., at page 25): "* * * here we have a grocery store with a small amount of this rubbing alcohol. One whole year, according to the uncontradicted testimony, only eighteen bottles were sold. A small number of bottles were sold each month and there is no evidence in this case, and this is important, that there was a reckless selling to any one else in the neighborhood. There is no scintilla of evidence that this defendant was reckless in selling this rubbing alcohol to any parties whatsoever. There is only this one single instance brought into question. This bears upon his intention, important evidence if he had sold to other persons in a reckless manner. But there is no evidence that this defendant made any sales in a reckless manner and no evidence of any intention to violate this law. I was looking for evidence to determine what kind of a place it was, how much alcohol he kept on hand. If he was making a business of selling for intoxicating purposes and not for medicinal purposes the likelihood is he would have sold more per month, more per year, instead of the very small number of bottles; so that all of the evidence in this case negatives the intention to break the law. Since all of the evidence in this case except one purchase, which I will refer to, negatives any intention to violate the law, and since we have this presumption of innocence and proof of good reputation, how are we going to find him guilty from the evidence. * * *"

The regulation in question does not say that the purchaser must intend to use the denatured alcohol for beverage purposes; it says that the seller must not sell it "under circumstances from which he might reasonably deduce that it is the intention of the purchaser to procure the same for use for beverage purposes." This means that the seller must exercise care in the sale thereof; that he may not sell indiscriminately; that he has the duty to satisfy himself that the purchaser does not intend to use the alcohol as a beverage. The sales to the agent violated the law although he had no intent to actually drink the stuff or force someone else to do so. We believe it is sufficient that the alcohol be sold and purchased *as a bever-*age. The appellant would have us read into the regulation words not therein contained, namely, that the purchaser must use the alcohol as a beverage. This we are not at liberty to do. Johnson's appearance, manner, and statements indicated that he did not purchase the alcohol for rubbing purposes, but *as a beverage* and the clerks made no inquiry or other effort to ascertain the use to which the purchaser intended to put the alcohol, but sold it regardless of purpose, in disregard of the regulation and in defiance of previous warnings. Four times Johnson asked for "another" bottle of alcohol and at the time of the last two purchases he told the clerk that he was buying the denatured alcohol to drink. From such circumstances any reasonable man would deduce that the purchase was for beverage purposes. Compare Weinstein v. United States, 1 Cir., 293 F. 388, 389, where the court said: "We think the intention referred to in the statute (section 18) is that of the seller alone. It is his act which is made lawful or unlawful, depending upon his intention in regard to the use to be made of the article sold, provided the article is designed to carry out that purpose."

The appellants next urge that, "The evidence was insufficient to convict appellants on any counts whatsoever except possibly those arising out of the last two sales made on April 15th, 1939." These latter two sales were made by clerk Maenpa and were made despite Johnson's statements that he wanted to drink the alcohol. In view of our conclusions above set forth, we deem it unnecessary to discuss this point.

The appellants further argue that, "The imposition of sentence under each count of the indictment constituted double punishment, in violation of the Fifth Amendment to the Constitution of the United States." In support of this contention, it is insisted that the sales alleged in counts 2 to 11, inclusive, were the same sales alleged in counts 12 to 21, inclusive, and that, although an additional factor—that the containers were unstamped—entered into the proof of the latter counts, evidence sufficient to support conviction under these latter counts would also be sufficient to support the former counts; in other words, it is contended that the offenses charged in counts 2 to 11, inclusive, were included in the of-

fenses charged in counts 12 to 21, inclusive.

It does not appear that this objection was called to the attention of the trial court; the notice of appeal of each appellant contains a statement of the grounds of appeal (Rule III, Rules of Practice and Procedure, etc., in Criminal Cases, 28 U.S.C.A. following section 723a), but this question is not raised; the assignments of error likewise do not suggest it. As already noted, no exceptions were taken to the charge of the court. Ordinarily, this court will decline to examine on appeal questions not raised in the trial court and upon which the trial judge was not accorded an opportunity to rule. Alberty v. United States, 9 Cir., 91 F.2d 461, 463, 464. Errors argued in the briefs, but not assigned as error, will not be considered. Baldwin v. United States, 9 Cir., 72 F.2d 810, 812. In any event, the point is not well taken. See Albrecht v. United States, 273 U.S. 1, 11, 47 S.Ct. 250, 71 L.Ed. 505, and King v. United States, 9 Cir., 31 F.2d 17, 18, 19.

Next, it is urged that appellant Dehne was not guilty of violation of 26 U.S.C.A. § 1397 (a) (1), now 26 U.S.C.A. Int.Rev.Code § 3253, because he was not the proprietor of the business and, therefore, was not carrying on the business of retail liquor dealer. Assuming, without deciding, that the question was raised properly in the trial court and reserved on this appeal, it is, nevertheless, without merit. Although one Circuit Court of Appeals has arrived at what appears to be an opposite conclusion (Anderson v. United States, 5 Cir., 30 F.2d 485), it is the rule in this circuit that one may be guilty, as a principal, of carrying on an unlawful business though he have no proprietary interest therein. Borgia v. United States, 9 Cir., 78 F.2d 550, 555; Cvitkovic v. United States, 9 Cir., 41 F.2d 682, 684; Vukich v. United States, 9 Cir., 28 F.2d 666, 669, 18 U.S.C.A. § 550.

Neither does any reason present itself why Dehne was not properly found guilty of all sales, rather than those only in which he physically participated. Dehne was manager of the store, in a position of responsibility, the others were merely clerks; the business was carried on under his direction, as agent for the corporate defendant. "It is not necessary that an aider or abettor be present at the actual commission of the offense or know details

thereof. Collins v. United States [8 Cir.], 20 F.2d 574, 578; Parisi v. United States [2 Cir.], 279 F. 253, 255." Borgia v. United States, supra, at page 555 of 78 F.2d.

The last assignment urged by the appellants is that the trial court erred in permitting the introduction of the testimony of Police Officer Beadle to the effect that he had seen drunkards and "dehorners" enter the United store and leaving it. The assignment reads:

"That the Court erred in admitting the following portion of the testimony of Government witness Roy H. Beadle:

"Q. Now, I will ask you about the first of January of this year and up until the 15th of April, what observation, if any, have you made, or what have you seen with reference to the United Cigar Store and the sale, if any, of rubbing alcohol?

"Mr. Corette: To which we object on the ground and for the reason it does not tend to prove any issue in the case, and it is incompetent, irrelevant and immaterial, and does not relate to any of the purchases alleged in the indictment, but merely to general purchases.

"The Court: Overruled.

"Mr. Corette: Exception, please.

"The Court: Exception noted.

"Q. What have you observed, tell us. A. Why I have observed the traffic at the United Cigar Store, people going in and out, and I have noticed the dehorns and rubbing alcohol drunkards going into the United Cigar Store at different times in my duties on the corner.

"Q. And have you noticed them coming out of the store? A. Yes, I have.

"Mr. Corette: The same objection, your Honor, to this entire line of testimony.

"The Court: Very well, the objection will be noted to each question.

"Mr. Corette: And exception."

In arguing this assignment, the appellants expand the allegedly objectionable testimony to include the testimony of Beadle to the effect that he had seen these drunkards and "dehorns" carrying rubbing alcohol out of the United store and had made an arrest of a man who was intoxicated and who had on his person a bottle of Weko Rubbing Alcohol, which he further testified was the brand sold at the United store. Obviously, this was not

within the scope of the assignment, which did not cover any of these factors, and, in view of the rule that the full substance of the allegedly objectionable evidence must be included in the assignment, our review is curtailed. It is quite clear that there was no harm in any of the evidence set forth in the assignment; the harm, if any, was in what followed.

Even should we assume the question properly brought to our attention, we see no error in evidence which might tend to prove other sales of denatured alcohol to individuals who used it as a beverage. The first count charged the defendants with carrying on the business of a retail liquor dealer without payment of the special tax required by law, and, for "the purpose of determining the intent of the defendants with respect to the sales charged in [the indictment], the circumstances surrounding other sales made both prior and subsequently thereto could be considered." Burtnett v. United States, 10 Cir., 62 F.2d 452, 454. See also Ledbetter v. United States, 170 U.S. 606, 610, 18 S.Ct. 774, 42 L.Ed. 1162.

The judgment is affirmed.