THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EMILIANO DÍAZ MOURE, ALIAS MILLÁN, Defendant and Appellant.

Nos. 14368–381. Argued May 1, 1950.—Decided June 5, 1950.

*César Andréu Rivas* for appellant. *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The appellant herein was accused and convicted of fourteen violations of the Spirits and Alcoholic Beverages Act. In each one of the counts he was charged with having in his possession and at his disposal on or about the 28th of June, 1949, in the Minillas Ward of Bayamón "a tin container with five gallons of rum (distilled spirits), without having attached the internal revenue stamps required by the Act."

The fourteen cases were heard together in the lower court. The evidence showed that the appellant was carrying the fourteen containers for which the afore-mentioned fourteen charges were filed against him, in a car driven by

him and in which they were seized. After convicting the defendant of each one of the violations charged, the lower court sentenced him to one month in jail in the criminal action which was first in the order of filing, to two months in the following one according to the order of filing and so on progressively adding one month in each one of the subsequent causes in the order of their filing, up to one year in jail in the twelfth, one year in the thirteenth and one year in the fourteenth, making a total of 8 years and 6 months in jail.

The defendant appealed from each and every one of the sentences which were made a single action for the purpose of the appeal. In his brief he maintains that the lower court erred (1) in overruling the motion of unlawful search and suppression of evidence and (2) in acting with passion, prejudice, and partiality in weighing the evidence and imposing unfair, excessive and unreasonable sentences.

The Assistant *Fiscal* of this Court refutes the errors assigned, but agrees with the appellant in that part where he impeaches the penalties imposed, and concludes that the lower court abused its discretion in imposing them.

Even though he does not make a specific assignment of error, the appellant maintains that notwithstanding the discovery of fourteen containers without the corresponding internal revenue stamps, it is only one crime for which there is only one charge, since the possession of said containers constitutes a single act committed the same day and in the same place and date. This makes it necessary that we determine, before considering the errors assigned, whether we are dealing with one or fourteen crimes.

Section 21 of the Spirits and Alcoholic Beverages Act —No. 6 of June 30, 1936—provides the following:

"No person shall transport, possess, buy, sell, or transfer distilled spirits or alcoholic beverages unless there is affixed to the container thereof a stamp evidencing the payment of the internal-revenue taxes imposed by this Act on said taxable

products, except the distilled spirits and alcoholic beverages held on deposit or in process of rectification, blending, or bottling, or in use in the processes of manufacture; *Provided,* That the Treasurer may, in his discretion and by regulation, make specific exemptions in cases where it is reasonably shown that such exemptions will not endanger the proper collection of taxes."

Section 85 in turn provides:

"Every person who violates or fails to observe any of the provisions of this Act or of the regulations which by virtue hereof may be promulgated; and every person who knowingly aids, permits, or otherwise assists another to violate or to fail to observe any of the provisions of this Act or of its regulations in regard to its provisions, shall, when no other penalty is specifically indicated, be guilty of a misdemeanor."

As it should be noted the above-copied § 21 establishes different prohibitions, that is, *to transport, possess, purchase, sell or transfer* distilled spirits or alcoholic beverages, unless there is affixed to the container thereof an internal-revenue stamp. The violation or failure to observe the aforesaid provisions, according to § 85, constitutes a misdemeanor, when no other penalty is specifically indicated in the Act. Section 21 is essentially identical with § 2803 of the United States Code (26 U.S.C.A., § 2803, p. 553).

We have made a careful study of the federal cases interpreting § 2803 and we have found nothing indicating that under the same circumstances as those of the present case more than one charge was filed. On the contrary, even though this precise question does not appear to have been decided, in cases involving more than one container prosecutions were carried on under a single accusation. *Martin* v. *United States*, 155 F. 2d 503 (C. A. 5, 1946); *Shew* v. *United States*, 155 F. 2d 628 (C. A. 4, 1946); *United States* v. *Fatone*, 128 F. 2d 261 (C. A. 2, 1942), cert. denied 63 S.Ct. 37, 317 U. S. 626, 87 L.ed. 507; *United States* v. *Hodorowicz*, 105 F. 2d 218 (C. A. 7, 1939); *Scher* v. *United States*, 95 F. 2d 64 (C. A. 6, 1938), affirmed 59 S.Ct. 174,

305 U. S. 251, 83 L.ed. 151; *Evans* v. *United States*, 90 F. 2d 851 (C. A. 5, 1937); *Wheeler* v. *United States*, 80 F. 2d 678 (C. A. 5, 1935); *United States* v. *Sarro*, 14 F. Supp. 397 (E.D. N.Y., 1936). What has been clearly decided in the federal jurisdiction is that under § 2803, identical on that point with § 21 of our Act, each one of the acts in the prohibitions contained therein constitutes a separate and distinct violation, which may be committed successively by the same person. *Albrecht* v. *United States*, 273 U. S. 1, 71 L.ed. 505 (1927); *Garhart* v. *United States*, 157 F. 2d 777 (C. A. 10, 1946); *United States* v. *Kolodny*, 149 F. 2d 210 (C. A. 2, 1945); *United Cigar Whelan Stores Corporation* v. *United States*, 113 F. 2d 340 (C. A. 9, 1940); *United States* v. *Hodorowicz, supra; Taran* v. *United States*, 88 F. 2d 54 (C. A. 8, 1937); *Evans* v. *United States, supra; Driskill* v. *United States*, 24 F. 2d 413 (C. A. 9, 1928); *Hadley* v. *United States*, 18 F. 2d 507 (C. A. 8, 1927); *Steckler* v. *United States*, 7 F. 2d 59 (C. A. 2, 1925).

Although the failure to affix an internal revenue stamp in each one of the containers having distilled spirits or alcoholic beverages is a fraud to the public treasury, nevertheless the statutory prohibition in § 21 and the penalty contained in § 85 are directed toward the act itself of transporting, possessing, purchasing, selling, or transferring the distilled spirits or alcoholic beverages in said containers, without reference to the number thereof which is transported, possessed, purchased, sold or transferred at the same time. The basis, then, for making a person responsible for the violation of one or more of the prohibited acts covered by § 21 is the *act* of transporting, possessing, purchasing, selling or transferring the distilled spirits or alcoholic beverages when the container or containers do not have affixed thereto the internal revenue stamps prescribed by the Act.

In the present case the evidence showed the possession in a single act. Hence, we are dealing with only one violation which is the act of *possessing.*

■ As the Assistant *Fiscal* correctly summarizes in his brief, the evidence of both sides was the following:

"The prosecuting attorney called José Francisco Díaz, an internal revenue inspector, as the only witness for the prosecution, waiving the testimony of the other two witnesses whose names appeared in the charges because their testimony was cumulative evidence (T.E. 21).

"José Francisco Díaz testified, briefly, that about June 28, 1949, he was travelling with two other internal revenue inspectors along a path of the Minillas Ward of Bayamón, near a dairy, when he noticed that a car driven by Emiliano Díaz Moure was coming from the opposite direction, and that sitting next to him was Margaro Cruz, both of whom he already knew (T.E. 15) ; that when he realized they could not go through because the path was too narrow (T.E. 5), he, José Francisco Díaz, stepped out of the car and told inspector Figueroa, who was driving, to wait, that they could not go through, that they had to turn back (T.E. 5) ; that when he was in front of the other car, he smelled cane rum (*caña*) and when he looked toward the defendants' car, he saw some large cans, 'the kind used in the Army', which were on the back seat; that then, he went to look at them and felt them and saw that one of the cans was leaking rum; that a gush of rum was flowing out of it and that he smelled the large can and it was cane rum, and then he told the defendants that they were under arrest (T.E. 6). That none of those large cans had internal revenue stamps affixed thereto (T.E. 7), and that there were twelve on the back seat which could be seen from the outside (T.E. 8), and two on the front seat; that the containers were all closed; but that one leaked rum and he marked it (T.E. 9 and 10).

"Upon being examined by the defense, agent Díaz stated that when they met the defendants' car, the agents did not know that the latter were coming in the opposite direction (T.E. 11) ; that it was about two or three in the afternoon (T.E. 11) ; that he got out of the car 'to see if they could go through or if they could move further in order to continue, so as to leave the right side free for the other car' (T.E. 11) ; that he got out because the path there is very narrow (T.E. 12) ; that there were twelve large cans in the rear of the defendants' car, but that he could not tell exactly how many were on the floor and how many on the seat; that the cars faced each other

and stopped and he was between both cars; that it is not true that they (the inspectors) were in hiding and that when the defendants' car came near, they came out with their revolvers and asked the defendants to get out of their car (T.E. 14 and 15).

".   .   .   .   .   .   .   .

"The evidence for the defense consisted in the testimony of defendant Emiliano Díaz Moure, who, in summary, testified that on the day of the events he was driving a Buick automobile on Minillas Ward highway and that he was carrying said cans on the floor of the car, but that they could not be seen (T.E. 22) ; that they were all covered with rubbers that tightened them up and that none could be seen; that before reaching the dairy he found Margaro Cruz and gave him a lift in the car (T.E. 22 and 23) ; that later they were going uphill when the inspectors came and stood in their way with their cars and jumped at them holding their revolvers (T.E. 23) ; that Díaz jumped and pointed at him with a revolver and the other inspectors took hold of everything; that none of the large cans was leaking rum and that none smelled; that the fourteen large cans and the Buick car were his, and that Margaro Cruz, had nothing to do with the large cans (T.E. 24).

"Upon being cross-examined by the Prosecuting Attorney he stated that he had purchased said rum on the road and that he intended to sell it, although he claimed that 'he did not deal in rum' (T.E. 25)."

The facts in the present case are similar to those in *People* v. *Colón*, 68 P.R.R. 826, and in it we said that under the above-stated circumstances, it is unquestionable that there was probable cause for the search of the automobile and for the arrest of the defendant. The first error assigned does not exist.

■ Nor the second, for there is nothing in the record to warrant the charge of passion, prejudice, and partiality on the part of the trial judge. The imposition of progressive penalties, as we have previously said, is not a fact which by itself shows passion, prejudice, or partiality in the weighing of the evidence, inasmuch as in a criminal prosecution, the weighing of the evidence as such, is a function intended

mainly to determine the guilt or innocence of the accused. The use of discretion in imposing a penalty is something different.

In view of our conclusion that the appellant's action constitutes a single violation, we must vacate the judgments appealed from and remand the case to the lower court in order that the trial judge render a single judgment and accordingly make any provision as to the charges that should be dismissed, in harmony with this opinion.