El Pueblo de Puerto Rico, demandante y apelado, *v.* Emiliano Díaz Moure, *Alias* Millán, acusado y apelante.

Núms. 14368–381.—*Sometidos:* Mayo 1, 1950. *Resueltos:* Junio 5,1950.

506

*César Andréu Ribas,* abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El aquí apelante fué acusado y convicto de catorce infracciones a la Ley de Bebidas. En cada una de las acusaciones se le imputó tener en su poder y a su disposición, en o por el día 28 de junio de 1949, en el Barrio Minillas de Bayamón "un envase de latón conteniendo cinco galones de ron (Espíritus Destilados), sin que dicho envase llevare adherido las estampillas correspondientes, significativas de haberse pagado el impuesto de Rentas Internas, fijado por la ley."

Los catorce casos fueron vistos conjuntamente ante el tribunal inferior. La prueba demostró que el apelante con-

·ducía los catorce envases de latón por los cuales se radicaron ·contra él las catorce acusaciones ya dichas, en un automóvil ·que él mismo conducía, y en el cual le fueron ocupados. Al declarar convicto al acusado de cada una de las infracciones imputadas, la corte inferior le sentenció a un mes de cárcel en la causa criminal radicada con la numeración más baja en el orden de radicación, a dos meses en la causa que le seguía en orden de radicación y así progresivamente aumentando un mes en cada una de las causas subsiguientes en el orden de radicación, hasta un año de cárcel en la duodécima, un año en la décimotercera y un año en la décimocuarta, haciendo un total de 8 años 6 meses de cárcel.

El acusado apeló en todos y cada uno de los casos, que fueron consolidados, a los fines de la apelación, en uno solo. En su alegato sostiene que la corte inferior erró (1) al declarar sin lugar la moción de registro ilegal y supresión de evidencia y (2) al actuar movida por pasión, prejuicio y parcialidad al considerar la prueba y dictar sentencias injustas, excesivas e irrazonables.

El Fiscal Auxiliar de este Tribunal refuta los errores señalados, pero conviene con el apelante en aquella parte en que éste impugna la razonabilidad de las penas impuestas, concluyendo que la corte inferior abusó de su discreción al imponerlas.

■ Aun cuando no lo hace un señalamiento específico de error, el apelante sostiene que no obstante haberle sido ocupados catorce envases sin las correspondientes estampillas de rentas internas, se trata de un solo delito por el cual procede únicamente una sola acusación, pues la posesión de dichos envases constituye un solo acto realizado el mismo día y en el mismo sitio y fecha. Ésto nos lleva necesariamente a determinar, antes de considerar los errores señalados, si se trata de uno, o de catorce delitos.

El artículo 21 de la Ley de Espíritus y Bebidas Alcohólicas—núm. 6 de 30 de junio de 1936—dispone lo siguiente:

"Ninguna persona trasportará, poseerá, comprará, venderá o traspasará espíritus destilados o bebidas alcohólicas, a menos que el envase que los contiene lleve adherido una estampilla significando que se han pagado los impuestos de rentas internas fijados por esta Ley sobre dichos productos tributables, con excepción de los espíritus destilados y bebidas alcohólicas que se tengan en depósito, o en proceso de rectificación, mezcla o embotellamiento, o que se estén usando en los procesos de fabricación; *Disponiéndose,* que el Tesorero a su discreción y por reglamentación, puede hacer excepciones específicas en aquellos casos donde se demuestre de un modo razonable que dichas excepciones no harán peligrar la debida recaudación de impuestos."

El artículo 85 a su vez provee:

"Toda persona que infrinja o deje de observar las disposiciones de esta Ley o del reglamento que por virtud de ella se promulgue; y toda persona que a sabiendas ayude, permita o de otro modo ayude a otra a infringir o dejar de observar cualquier disposición de esta Ley o del reglamento respecto a sus disposiciones, será culpable de delito menos grave (*misdemeanor*), cuando no se indique específicamente otra pena."

Como ha de notarse, el artículo 21 arriba transcrito establece prohibiciones de distinta índole, o sea, *transportar, poseer, comprar, vender* o *traspasar* espíritus destilados o bebidas alcohólicas, a menos que el envase que los contiene lleve adherida una estampilla de rentas internas. La infracción o inobservancia de las anteriores disposiciones, según el artículo 85, constituye un delito menos grave, de no indicarse específicamente otra pena en la ley. El artículo 21 es en esencia idéntico a la sección 2803 del Código de los Estados Unidos (26 U.S.C.A., sección 2803, pág. 553).

Hemos hecho un examen detenido de la jurisprudencia federal interpretativa de la mencionada sección 2803 y nada hemos encontrado que indique que bajo circunstancias similares a la del presente caso se haya radicado más de una acusación. Por el contrario, aun cuando específicamente la cuestión no aparece resuelta, en casos de más de un envase se han seguido procesos bajo una sola acusación. *Martin* v.

*United States*, 155 F.2d 503 (C.C.A. 5, 1946); *Shew* v. *United States*, 155 F.2d 628 (C.C.A. 4, 1946); *United States* v. *Fatone*, 128 F.2d 260 (C.C.A. 2, 1942), *certiorari* denegado 63 S.Ct. 37, 317 U.S. 626, 87 L.ed. 507; *United States* v. *Hodorowicz*, 105 F.2d 218 (C.C.A. 7, 1939); *Scher* v. *United States*, 95 F.2d 64 (C.C.A. 6, 1938), confirmado 59 S.Ct. 174, 305 U.S. 251, 83 L.ed. 151; *Evans* v. *United States*, 90 F.2d 851 (C.C.A. 5, 1937); *Wheeler* v. *United States*, 80 F.2d 678 (C.C.A. 5, 1935); *United States* v. *Sarro*, 14 F.Supp. 397 (E.D. N.Y., 1936). Lo que sí claramente se ha resuelto en la jurisdicción federal es que bajo la sección 2803, idéntica en ese extremo al artículo 21 de nuestra ley, cada una de las modalidades en las prohibiciones que la misma contiene, constituye una infracción separada y distinta, en las cuales puede una misma persona incurrir sucesivamente. *Albrecht* v. *United States*, 273 U.S. 1, 71 L.ed. 505 (1927); *Garhart* v. *United States*, 157 F.2d 777 (C.C.A. 10, 1946); *United States* v. *Kolodny*, 149 F.2d 210 (C.C.A. 2, 1945); *United Cigar Whelan Stores Corporation* v. *United States*, 113 F.2d 340 (C.C.A. 9, 1940); *United States* v. *Hodorowicz*, supra; *Taran* v. *United States*, 88 F.2d 54 (C.C.A. 8, 1937); *Evans* v. *United States*, supra; *Driskill* v. *United States*, 24 F.2d 413 (C.C.A. 9, 1928); *Hadley* v. *United States*, 18 F.2d 507 (C.C.A. 8, 1927); *Steckler* v. *United States*, 7 F.2d 59 (C.C.A. 2, 1925).

Si bien el dejar de adherir una estampilla de rentas internas en cada uno de los envases que contenga espíritus destilados o bebidas alcohólicas representa un fraude al erario público, sin embargo la prohibición de ley contenida en el artículo 21 y la sanción contenida en el 85, van dirigidas al hecho mismo de la transportación, posesión, compra, venta o traspaso de los espíritus destilados o bebidas alcohólicas contenidos en dichos envases, sin referencia al número de éstos que se transporten, posean, compren, vendan o traspasen al mismo tiempo. La base, pues, para exigir responsabilidad a una persona por la infracción de una o más de las modali-

dades comprendidas en el artículo 21 es el *acto* de transportar, poseer, comprar, vender o traspasar los espíritus destilados o bebidas alcohólicas cuando el envase o envases que los contenga, no lleve adheridas las estampillas de rentas internas exigidas por la ley.

En el presente caso la prueba demostró la posesión en un solo acto. Se trata pues de una sola infracción en la modalidad de *poseer*.

■ Según la resume correctamente el Fiscal Auxiliar en su alegato, la prueba de ambas partes fué la siguiente:

"Como único testigo de cargo presentó el fiscal al agente de rentas internas José Francisco Díaz, renunciando al testimonio de los otros dos testigos que aparecían al dorso de las acusaciones por ser el testimonio de éstos prueba acumulativa (T.E. 21).

"José Francisco Díaz declaró, en síntesis, que allá para el 28 de junio de 1949 iba él en compañía de otros dos agentes de rentas internas, Eugenio Figueroa y Rafael Rosario, por un camino vecinal del barrio Minillas de Bayamón, cerca de una lechería, cuando notó que en dirección contraria subía un carro guiado por Emiliano Díaz Moure, y que sentado al lado de éste venía Margaro Cruz, ambos de los cuales él ya conocía (T.E. 15); que al ver que no podían pasar por ser el camino muy estrecho (T.E. 5), él, José Francisco Díaz, se bajó del carro y le dijo al agente Figueroa, quien iba manejando, que se aguantara, que no podían pasar, que lo que había que hacer era dar para atrás (T.E. 5); que cuando estaba frente al otro carro le dió olor a ron caña, y cuando miró hacia el carro de los acusados, vió unos latones, 'de esos del Ejército', que estaban en el asiento de atrás; que entonces, los miró y los tocó y vió que estaba uno de los latones botando ron; que se le salía un chorro de ron y que olió el latón ése y era ron caña, y entonces les dijo a los dos acusados que estaban arrestados (T.E. 6). Que ninguno de esos latones tenía sellos de rentas internas (T.E. 7), y que venían doce en la parte de atrás que se podían ver desde afuera (T.E. 8), y dos en la parte delantera; que los envases estaban todos cerrados, pero que uno botaba ron, y él lo marcó (T.E. 9 y 10).

"A preguntas de la defensa, manifestó el agente Díaz que cuando se encontraron con el automóvil de los acusados ellos, los agentes, no sabían que éstos viniesen en dirección contraria

(T.E. 11) ; que era de dos a tres de la tarde (T.E. 11) ; que él se bajó 'para ver si podían pasar, a ver si podían echarse más adelante para pasar, para darle la derecha al otro carro' (T.E. 11) ; que se bajó porque el camino allí es muy estrecho (T.E. 12) ; que había doce latones en la parte de atrás del carro de los acusados, pero que no podía precisar cuántos venían en el piso y cuántos encima del asiento; que los carros se enfrentaron y pararon y él estaba en el medio de los dos carros; que no es cierto que ellos (los agentes) estuviesen escondidos y que al acercarse el carro de los acusados, revólver en mano les salieran al paso invitando a los acusados a bajarse de su carro (T.E. 14 y 15).

".    .    .    .    .    .

"La prueba de defensa consistió de la declaración del acusado Emiliano Díaz Moure, quien declaró en síntesis, que el día de los hechos él venía conduciendo un automóvil Buick por la carretera del Barrio Minillas y que en el mismo traía esos drones acostados en el piso, pero que los mismos no se veían (T.E. 22) ; que todos venían tapados con unas gomas que los apretaban, y que ninguno se veía; que antes de llegar a la lechería encontró a Margaro Cruz y lo cogió y lo montó en el carro (T.E. 22 y 23) ; que luego iban subiendo una cuesta cuando llegaron los agentes y se le atravesaron delante con el carro de ellos, y se le tiraron encima con revólveres en mano (T.E. 23) ; que Díaz brincó y le puso un revólver en el pecho, y los otros agentes le echaron mano a todos; que ninguno de los drones estaba chorreando y que ninguno expedía tufo; que los catorce drones de ron y el carro Buick eran suyos, y que Margaro Cruz nada tenía que ver con los drones (T.E. 24).

"A preguntas del fiscal manifestó haber comprado ese ron en la carretera, y que lo quería para venderlo, aunque alegó que 'él no traficaba con ron' (T.E. 25)."

Los hechos en el presente caso son similares a los de *Pueblo* v. *Colón*, 68 D.P.R. 893, y en él dijimos que bajo tales circunstancias existía causa probable para el registro del automóvil y para el arresto del acusado. No existe, pues, el primer error señalado.

Tampoco el segundo, pues nada hay en los autos que pueda justificar la imputación de pasión, prejuicio y parcialidad al juez sentenciador. La imposición de penas progre-

sivas, según dejamos indicado anteriormente, no es en sí un hecho que revele pasión,. prejuicio o parcialidad en la apreciación de la prueba, ya que, en el proceso judicial, la apreciación de la .prueba, como tal, es función que va dirigida esencialmente a determinar la culpabilidad o inocencia de un acusado.  El ejercicio de la discreción en la imposición de la pena es otra cosa.

*Por la conclusión a que llegamos de que la actuación del apelante constituye una sola infracción, forzoso es dejar sin efecto las sentencias apeladas, y devolver el caso a la corte inferior, para que el juez sentenciador dicte una sola sentencia, y provea como corresponda en cuanto a las acusaciones que deban ser sobreseídas, de conformidad con esta opinión..*